IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| **J.D. FRANCIS, INC.**<br>**Plaintiff,**<br>**vs.**<br>**BREMER COUNTY, IOWA,**<br>**Defendant.** | **No. C09-2065**<br>**RULING ON MOTION FOR SUMMARY JUDGMENT** |

---

**TABLE OF CONTENTS**


*I.* *INTRODUCTION* . . . 1

*II.* *RELEVANT FACTS AND PROCEEDINGS* . . . 2
- *A.* *The Requests for Rezoning* . . . 2
- *B.* *The State Court Action* . . . 3
- *C.* *The Instant Federal Action* . . . 4

*III.* *LEGAL STANDARD FOR SUMMARY JUDGMENT* . . . 6

*IV.* *DISCUSSION* . . . 7
- *A.* *The Parties' Arguments* . . . 7
- *B.* *Determination of Ripeness in a Takings Claim* . . . 8
- *C.* *The "Private Taking" Exception* . . . 10

*V.* *SUMMARY* . . . 13

*VI.* *ORDER* . . . 14


## *I. INTRODUCTION*

On the 14th day of March 2011, this matter came on for hearing on the Motion for Summary Judgment (docket number 17) filed by Defendant Bremer County, Iowa ("Bremer County") on December 21, 2010; the Resistance (docket number 20) filed by Plaintiff J.D. Francis, Inc. ("Francis") on February 1, 2011; the Reply (docket

number 23) filed by Bremer County on February 10, 2011; and the Surreply (docket number 25) filed by Francis on March 11, 2011. Plaintiff J.D. Francis, Inc. was represented by its attorney, Matthew M. Craft. Defendant Bremer County, Iowa was represented by its attorney, John T. McCoy.

## *II. RELEVANT FACTS AND PROCEEDINGS*

### *A. The Requests for Rezoning*

J.D. Francis is a real estate developer and homebuilder.[1] On November 14, 2006, Francis purchased approximately 35 acres of land located outside the City of Waverly, Iowa, in Bremer County. Francis purchased the land from Edna C. Anhalt ("Anhalt").[2] Francis intended to develop the land for residential purposes.

In June 2006, prior to the sale and purchase of the land, Anhalt and Francis submitted a request to Bremer County to rezone the land (34.5 acres) from agricultural to residential. Following a public hearing on June 20, 2006, the Bremer County Planning and Zoning Commission (the "Commission") unanimously recommended that Anhalt and Francis' request for rezoning be denied. On July 31, 2006, following another public hearing, the Bremer County Board of Supervisors (the "Board") followed the Commission's recommendation, and unanimously denied Anhalt and Francis' request for rezoning. According to the Board minutes, the application was denied "so that good Agricultural Farm land not be taken out of production and because of many other environmental concerns."[3]

---

[1] This case was initially brought by J.D. Francis, individually. It was recently discovered by Plaintiff, however, that the property which is the subject of the dispute was purchased by J.D. Francis, Inc. On February 9, 2011, the Court granted Plaintiff's motion to substitute J.D. Francis, Inc. as Plaintiff. The purchase of the land by Francis in his corporate capacity has no legal significance to the issues presented here.

[2] Anhalt owned the property individually and as Trustee of the Edna C. Anhalt Revocable Trust and the Merlyn M. Anhalt Trust.

[3] *See* Defendant's Appendix (docket number 17-3) at 186.

On August 1, 2006, Anhalt and Francis submitted a revised rezoning request to Bremer County. In the new application, Anhalt and Francis requested that 30.75 acres of Anhalt's land be rezoned from agricultural to residential. That is, Anhalt and Francis severed approximately four acres of land from the initial request. This modification had the effect of reducing the properties' average corn suitability rating ("CSR").[4]

On August 15, 2006, the Commission held a public hearing on Anhalt and Francis' revised rezoning request. The Commission made no recommendation at that time, and tabled the request until the next Commission meeting in September. On September 19, 2006, the Commission, on a 4-1 vote, recommended that the revised rezoning request be denied. On October 9, 2006, following another public hearing, the Board voted unanimously to deny the rezoning request.[5]

### *B. The State Court Action*

On November 1, 2006, Francis and Anhalt filed a Petition at Law in the Iowa District Court for Bremer County, challenging the Board's decision to deny their rezoning requests. Specifically, Francis and Anhalt alleged that: (1) the Board's failure to approve their rezoning requests was arbitrary and capricious and in violation of the County's Comprehensive Land Use Plan ("Comprehensive Plan"); and (2) refusal to rezone the property violated their substantive due process and equal protection rights under both the United States Constitution and the Iowa Constitution.

On June 22, 2007, Bremer County filed a motion for summary judgment seeking dismissal of Francis and Anhalt's petition. On July 18, 2007, Francis and Anhalt filed a resistance to Bremer County's motion; and filed their own motion for summary judgment,

---

[4] According to the County's 2003 Comprehensive Land Use Plan, soil types with a CSR greater than 50 constitute "prime" agricultural soils, and should be preserved for agricultural use. *See* Defendant's Appendix (docket number 17-3) at 176. Anhalt's initial rezoning request had a CSR of 53.60. *See id.* at 181. The modified application had an average CSR of 49.5. *See id.* at 191.

[5] The hearing before the Board was reported, and a transcript was submitted as Defendant's Exhibit 38. *See* Defendant's Appendix (docket number 17-3) at 235-46.

seeking judgment as a matter of law on their claims against Bremer County. On September 10, 2008, the Iowa District Court entered an Order granting Bremer County's motion and dismissing Francis and Anhalt's petition. The Iowa District Court concluded, among other things, that:

> the board acted rationally in denying [Francis and Anhalt's] zoning request. The board had discretion to decide whether to rezone the property and did not exercise that discretion arbitrarily or capriciously. I cannot conclude that the board's motives were improper and I do not conclude that they were pretextual.
>
> Moreover, Plaintiff Anhalt[6] still enjoys economically viable use of the parcel in question under the current zoning. It is zoned for agricultural purposes and is currently farmed. She can continue to enjoy that use of the parcel in question because the land can continue to be farmed or used for any other agricultural purpose within the meaning of the zoning provision.
>
> There is no basis for setting aside the board's denial of the proposed rezoning.

*See* Defendant's Appendix (docket number 17-3) at 84.

On October 3, 2008, Francis and Anhalt timely filed a Notice of Appeal. On October 21, 2009, the Iowa Court of Appeals entered a decision affirming the ruling of the Iowa District Court. *See Francis v. Bremer County Board of Supervisors*, 776 N.W.2d 886 (Table), 2009 WL 3369263 (Iowa Ct. App. 2009).

### *C. The Instant Federal Action*

On December 11, 2009, Francis filed a Complaint and Jury Demand (docket number 1) alleging an unconstitutional taking of his property without compensation in violation of the United States Constitution and the Constitution of the State of Iowa. Specifically, Francis claims that Bremer County's actions constitute a taking of his

---

[6] As noted above, Anhalt sold the land to Francis shortly after filing the state court action.

property in the following respects: (1) the refusal to rezone his land "completely deprived [him] of all economically beneficial use of his property"; (2) the rezoning denial "interfered with [his] distinct investment backed expectations"; (3) the denial of his rezoning requests "is so onerous that its effect constitutes a direct appropriation or ouster of Plaintiff entitling him to compensation as a result of the taking"; and (4) Bremer County's actions constitute intentional interference with his prospective business and profits anticipated therefrom.[7] On February 12, 2010, Bremer County filed an Answer and Jury Demand (docket number 5), generally denying the material allegations contained in the complaint, and asserting certain affirmative defenses.

On June 21, 2010, Francis amended his complaint, adding an additional claim. In its Comprehensive Plan adopted in 2003, Bremer County designated the subject property as "future residential." On December 7, 2009 – shortly after the Iowa Court of Appeals affirmed the summary dismissal of Francis and Alhalt's state court action – the Board amended the 2003 Comprehensive Plan to reclassify certain land designated for residential development to agricultural land. The property which is the subject of the instant action was included in the land which was redesignated.[8] Francis asserts that Bremer County's amendment to its Comprehensive Plan – redesignating his property as agricultural, and removing it from the category of residential growth and development – constitutes a taking.[9] On June 30, 2010, Bremer County filed an Answer to Plaintiff's Amended Complaint and Jury Demand (docket number 12), generally denying the material allegations contained in the amended complaint, and asserting certain affirmative defenses. Trial is scheduled before the undersigned on May 2, 2011.[10]

---

[7] *See* Francis' Complaint and Jury Demand (docket number 1) at 2-3; ¶ 12a.-d.

[8] According to Defendant, approximately five percent of the land receiving a new designation on December 7, 2009 was the property owned by Francis.

[9] *See* Amended Complaint and Jury Demand (docket number 11) at 2; ¶¶ 11-12.

[10] On April 13, 2010, both parties consented to proceed before a United States (continued...)

### *III. LEGAL STANDARD FOR SUMMARY JUDGMENT*

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).[11] A genuine dispute as to a material fact "'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to establish the existence of a genuine dispute as to a material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

---

[10](...continued)
Magistrate Judge, pursuant to the provisions set forth in 28 U.S.C. § 636(c).

[11] An amended version of Federal Rule of Civil Procedure 56 became effective on December 1, 2010. However, "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note.

## *IV. DISCUSSION*

### *A. The Parties' Arguments*

Bremer County filed the instant Motion for Summary Judgment (docket number 17) on December 21, 2010. Bremer County initially offered three arguments in support of its motion for summary judgment. First, Bremer County argued that Francis' complaint is barred pursuant to the doctrine of claim preclusion. Second, Bremer County argued that it is entitled to summary judgment because the Board had the legal discretion to deny Francis' rezoning requests, and to amend the Comprehensive Plan. Lastly, Bremer County argued that it is entitled to summary judgment because neither the denial of Francis' rezoning requests, nor the 2009 amendment to the Comprehensive Plan, constitutes an unconstitutional "taking."

Francis argues that the Board's refusal to rezone his property consistent with the Comprehensive Plan then in effect, and the County's later amendment to the Comprehensive Plan, removing the designation of "future residential," resulted in a "taking" for which "just compensation" is required.[12] In his brief, Francis also addressed the "threshold issue" of whether his taking claim is ripe for adjudication in federal court. Francis argued that he "did not maintain a ripe cause of action until he had exhausted his administrative remedies, which included waiting until finalization of the District Court and Iowa Court of Appeals decisions."[13]

In its reply, Bremer County seized upon the issue of whether the federal court has jurisdiction to consider a "takings" claim which is not yet "ripe."[14] Citing *Williamson*

---

[12] The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law, nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. Similarly, Article I, section 18 of the Iowa Constitution provides that "[p]rivate property shall not be taken for public use without just compensation."

[13] *See* Plaintiff's Brief (docket number 20-3) at 18.

[14] The jurisdictional issue of ripeness was not raised by Bremer County in its (continued...)

*County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the County argues that the takings claim is not ripe because Francis failed to seek compensation in state court for the alleged taking. In his surreply brief, Francis argues, citing *McKenzie v. Whitehall*, 112 F.3d 313, 316 (8th Cir. 1997), that a property owner need not seek compensation in state court if the taking was for a private purpose, rather than a public purpose.

At the time of hearing, Francis' attorney conceded that Francis may not relitigate those issues decided by the state court. That is, Francis' claims are no longer based on substantive due process or equal protection. Instead, Francis' sole claim is that Bremer County's actions constitute a taking of his property and he is entitled to just compensation. Francis concedes that generally a takings claim is not ripe if the property owner did not seek compensation in state court. Francis argues, however, that here the taking was for a private purpose, rather than for a public purpose, and therefore he was not required to first seek compensation in state court.

***B. Determination of Ripeness in a Takings Claim***

The Court must first determine the jurisdictional question of ripeness. In *Williamson County*, the United States Supreme Court set forth two requirements for determining ripeness in a takings claim. First, the government's decision must be final. "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." 473 U.S. at 186. Second, the property owner must seek compensation in an available state proceeding. A takings claim is not ripe if the aggrieved party failed to "seek compensation through the procedures the State has provided for doing so." *Id.* at

---

[14](...continued)
motion for summary judgment or supporting brief. However, subject matter jurisdiction may be raised at any time. *Alternate Fuels, Inc. v. Cabanas*, 538 F.3d 969, 975 (8th Cir. 2008).

194. *See also Dahlen v. Shelter House*, 598 F.3d 1007, 1010 (8th Cir. 2010) (providing that *Williamson* "governs the jurisdictional question of ripeness with respect to takings claims, setting out two requirements: (1) there must be a 'final decision' with respect to the property at issue, and (2) the aggrieved party must 'seek compensation through the procedures the State has provided for doing so.'") (citation and quotation omitted); *Iowa Coal Mining Co., Inc. v. Monroe County*, 555 N.W.2d 418, 432 (Iowa 1996) (providing that in *Williamson*, the United States Supreme Court "imposed two conditions, both of which must be met before a takings claim is ripe[.] . . . First, there must be finality in the underlying proceedings. Second, the landowner must exhaust state remedies available to vindicate the owner's rights.").

Here, it is undisputed that a final decision has been rendered regarding Bremer County's regulatory actions affecting Francis' property. Therefore, the first requirement for ripeness under *Williamson* has been met. *See Williamson*, 473 U.S. at 186.

Turning to the second requirement, in order for a takings claim to be ripe, the aggrieved party must first seek compensation through the procedures provided by the State. *Dahlen*, 598 F.3d at 1010. "Failure to satisfy this requirement alone means that [the] claim is not ripe and that federal courts lack jurisdiction to entertain [such a] claim." *Id.* (citing *Snaza v. City of St. Paul*, 548 F.3d 1178, 1181-82 (8th Cir. 2008)). In *Williamson*, the United States Supreme Court explained its reasoning for the second requirement:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a 'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking. If the government has provided an adequate process for obtaining compensation, and if resort to that process 'yields just compensation,' then the property owner 'has no claim against the government' for a taking. Thus, . . . if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of

> the Just Compensation Clause until it has used the procedure and been denied just compensation.

473 U.S. at 194-95 (citations and quotations omitted).

In Iowa, the procedure for seeking compensation for an alleged taking of private property is inverse condemnation. Inverse condemnation is "an action pursued by a property owner who claims a governmental entity has appropriated all or part of the owner's property interest without a formal condemnation proceeding." *K & W Electric, Inc. v. State*, 712 N.W.2d 107, 115 (Iowa 2006); *see also Kingsway Cathedral*, 711 N.W.2d 6, 9 ("Inverse condemnation is 'a generic description applicable to all actions in which a property owner, in the absence of a formal condemnation proceeding, seeks to recover from a governmental entity for the appropriation of his property interest.'") (quotation omitted); *Dahlen*, 598 F.3d at 1010 (noting that inverse condemnation is the procedure Iowa provides for obtaining compensation for an alleged taking).

In this case, Francis has not availed himself of Iowa's inverse condemnation procedure for seeking compensation from Bremer County for its alleged taking. Therefore, Francis has failed to meet the second *Williamson* requirement for ripeness in a takings claim. *See Williamson*, 473 U.S. at 194 (A takings claim is not ripe if the aggrieved party failed to "seek compensation through the procedures the State has provided for doing so."). Accordingly, Francis' complaint would generally be dismissed without prejudice for lack of jurisdiction. *See Dahlen*, 598 F.3d at 1010 ("Failure to satisfy [the second] requirement alone means that [the] claim is not ripe and that federal courts lack jurisdiction to entertain [such a] claim.").

### *C. The "Private Taking" Exception*

However, Francis asserts an exception to the general requirements found in *Williamson*. In his surreply brief, Francis asserts – for the first time – that the alleged taking was for a private purpose, rather than a public purpose, and therefore he was not required to seek compensation in state court. *See Dahlen*, 598 F.3d at 1010 ("Because no amount of compensation can remedy a private taking, resort to inverse condemnation in

such cases is unnecessary."); *McKenzie*, 112 F.3d at 317 (a property owner "need not pursue state procedures" for a taking "without a justifying public purpose . . . because this is a Constitutional violation even if compensation is paid").

In determining whether a "taking" complies with the public purpose clause of the Fifth Amendment, "courts have employed a 'traditionally broad understanding of public purpose.'" *Dahlen*, 598 F.3d at 1012 (citing *Kelo v. City of New London*, 545 U.S. 469, 485 (2005)). The public purpose requirement is satisfied "where the exercise of the eminent domain power is rationally related to a *conceivable* public purpose." *Id.* (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 241 (1984)) (emphasis added). "It is within the legislative province to determine in the first instance whether a use is public in nature, which determination should not be disturbed by the courts 'unless it is clear, plain and palpable it is private in character.'" *Milligan v. City of Red Oak*, 230 F.3d 355, 359 (8th Cir. 2000) (quoting *Vittetoe v. Iowa S. Utils. Co.*, 123 N.W.2d 878, 880 (Iowa 1963)).

In *Midkiff*, the Court addressed the issue of whether the "public use clause" of the Fifth Amendment prohibited the State of Hawaii "from taking, with just compensation, title in real property from lessors and transferring it to lessees in order to reduce the concentration of ownership of fees simple in the State." 467 U.S. at 231-32. The Court noted that "[a] purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void." *Id.* at 245. Nonetheless, the Court concluded that the transfer of title from one private party to another was not a private taking. The Land Reform Act adopted by the Hawaii Legislature was "not to benefit a particular class of identifiable individuals but to attack certain perceived evils of concentrated property ownership in Hawaii – a legitimate public purpose." *Id.*

In *Kelo*, the Court addressed the question of whether a development plan which required the acquisition of property from unwilling owners, in exchange for just compensation, qualified as a "public use" within the meaning of the takings clause of the Fifth Amendment. 545 U.S. at 472. The Court noted that "the City would no doubt be

forbidden from taking petitioners' land for the purpose of conferring a private benefit on a particular private party." *Id.* at 477. "Nor would the City be allowed to take property under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit." *Id.* at 478.

> The disposition of this case therefore turns on the question whether the City's development plan serves a "public purpose." Without exception, our cases have defined that concept broadly, reflecting our longstanding policy of deference to legislative judgments in this field.

*Kelo*, 545 U.S. at 480. The Court concluded that the development plan advanced a legitimate public purpose and, therefore, was not violative of the Fifth Amendment.

Turning to the facts in the instant action, there was no actual taking of Francis' property. Rather, the Board's actions prohibit Francis from developing the agricultural land into residential lots. At the final public hearing before the Bremer County Board of Supervisors on October 9, 2006, concerns were raised regarding ground source water, sewage, run-off, sinkholes, traffic, and the preservation of agricultural land. Board member Gaylord Hinderaker stated his decision rested on a "balance" of several factors, including "CSR, environmental, quality of life issues, safety concerns, roads."[15] When pressed, Mr. Hinderaker stated the "primary reason" he voted to refuse the rezoning request was "to keep the area agricultural."[16] Similarly, Board member Kenneth Kammeyer stated his reason was "to keep ag land ag."[17] Board chairman Steven C. Reuter identified his "primary reason" as "CSR."[18]

Iowa Code chapter 335 authorizes a county board of supervisors to enact regulations and restrictions on the use of land within the county. One of the identified "objectives"

---

[15] *See* Defendant's Appendix (docket number 17-3) at 244.

[16] *Id.* at 246.

[17] *Id.*

[18] *Id.*

of such regulations is "to preserve the availability of agricultural land." *See* § 335.5. That is, the Iowa Legislature has determined that preservation of agricultural land is an appropriate objective of county zoning regulations. Therefore, the Board's refusal to rezone Francis' land from agricultural to residential "is rationally related to a *conceivable* public purpose." *Milligan*, 230 F.3d at 359.

Francis claims that the reasons advanced by the Board were pretextual, and the Board's actions were taken for the benefit of private parties. This Court agrees with the Iowa District Court which found that "I cannot conclude that the board's motives were improper and I do not conclude that they were pretextual."[19] Francis is unable to cite any case where a governmental entity's refusal to rezone has been found to be a taking for a private purpose. Under the "traditionally broad understanding of public purpose" described in *Midkiff*, *Kelo*, and *Dahlen*, the Court finds that the Board's refusal to rezone the property, and its subsequent amendment to the Comprehensive Plan, advanced a legitimate public purpose. Therefore, the Court rejects Francis' claim that the alleged taking was for a private purpose. Since Francis did not seek compensation in state court for the alleged taking for a public purpose, this Court lacks jurisdiction to entertain such a claim. *See Dahlen*, 598 F.3d at 1010.

## *V. SUMMARY*

For a federal court to exercise jurisdiction in a regulatory takings action, the claim must be ripe. Ripeness requires (1) "a final decision regarding the application of the regulations to the property at issue[,]" and (2) the aggrieved party must "seek compensation through the procedures the State has provided for doing so." *Williamson*, 473 U.S. at 186, 194; *see also Dahlen*, 598 F.3d at 1010 (discussing both *Williamson* requirements); *Iowa Coal Mining Co., Inc. v. Monroe County*, 555 N.W.2d 418, 432 (Iowa 1996) (same). Francis has not sought compensation through Iowa's inverse condemnation procedures. Therefore, Francis has failed to meet the second requirement

[19] *See* Defendant's Appendix (docket number 17-3) at 84.

of *Williamson*. The exception applying to takings for a private purpose is not applicable here. Accordingly, the Court finds that Francis' claim is not ripe, and his complaint must be dismissed without prejudice for lack of jurisdiction. *See Dahlen*, 598 F.3d at 1010 ("Failure to satisfy [the second] requirement alone means that [the] claim is not ripe and that federal courts lack jurisdiction to entertain [such a] claim."). The Court need not reach the substantive issue of whether Bremer County's refusal to rezone the property, or its subsequent amendment to the Comprehensive Plan, constitutes a taking.

## *VI. ORDER*

**IT IS THEREFORE ORDERED** as follows:

1. The Amended Complaint and Jury Demand (docket number 11) filed by Francis on June 21, 2010, is hereby **DISMISSED** without prejudice for lack of jurisdiction.

2. The Motion for Summary Judgment (docket number 17) filed by Bremer County on December 21, 2010 is hereby **DENIED** as moot.

3. This case is **CLOSED**.

DATED this 17th day of March, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA